The next case on the calendar is Snowden v. Salomon. Good morning. This is Stephen Gaba for the Defendant's Appellants. Can everyone hear me? Yes. Our argument is that on a First Amendment retaliation claim, a public employee must demonstrate that he engaged in protected First Amendment activity, that he suffered an adverse employment action, and that there was a causal connection between the protected speech and the adverse employment action. But, under Mount Healthy, if the preponderance of the evidence shows that the employer would have taken the adverse employment action in any event, then there can be no finding of a causal link between the protected speech and the adverse employment action. In other words, if there are legitimate grounds which justify the adverse employment action, it can't be any First Amendment retaliation claim. Now, in our case, Snowden was indicted on serious criminal charges arising from his role in the demolition of the old village courthouse. And the village suspended him because of the indictment on the criminal charges. The charges involved both felony and misdemeanor. And as per the cases we've cited in our brief, there really can't be any question that the suspension was warranted, if not legally mandated. Under Mount Healthy, because he would have been suspended in any event, this fact defeats Snowden's First Amendment claim, retaliation claim, in regard to his suspension. Likewise, in the Civil Service Section 75 proceeding, which was upheld by the state courts, it was expressly and specifically determined that Snowden was guilty of incompetency and misconduct. The village manager, who was a non-party, David Sager, he terminated Snowden's employment based on the findings in the Section 75 proceeding of incompetence and misconduct. So again, under Mount Healthy, the existence of legitimate grounds for terminating Snowden's employment defeats Snowden's First Amendment retaliation claim. That is, he would have been terminated regardless of whether the defendants had, allegedly, mixed motives for terminating him. When you look at the remainder of Snowden's claims of the alleged acts of retaliation against him, they either aren't adverse employment actions at all. I mean, for example, he says that the village audited his vacation date. That's not an adverse employment action. Or that the village appointed an assistant code enforcement officer to assist him. Which, again, is not an adverse employment action. Or, to the extent that they could be considered adverse employment actions, they're barred by qualified immunity. For example, Snowden claims that he had a two-year employment contract from former mayor Gordon Jenkins. Now, Jenkins was removed from the office for malfeasance, but putting that aside, the village board rescinded his contract because there were no minutes indicating, this is supported in the record, there were no minutes indicating that the contract was ever approved by the village board. And, further, the village attorney had advised the defendants the contract would be illegal. Not only because it wasn't officially approved, but also because it would bind further boards. When you have a record like this, it shows circumstances under which a reasonable village board member in the defendant's position would have reasonably believed that terminating Snowden's contract did not violate his constitutional rights. Mr. Gaba, with respect to the Mt. Healthy argument, how do you deal with the argument that there are factual questions as to whether they would have terminated him or suspended him anyway? Well, Your Honor, the standard for under Mt. Healthy is a preponderance of the evidence. It isn't a moral certainty. It isn't mathematical demonstration. It's just a preponderance of the evidence. And when you look at what it is Snowden did here, I mean, he conspired with the mayor for this basically kickback scheme to have the village courthouse demolished for $5,000 when asbestos remediation would cost over $150,000. There was clear implication that the contractor was going to get further contracts out of this. You refer to a preponderance standard, but on motion practice here, is the inquiry whether a reasonable jury could have found that he would not have been suspended or terminated but for his First Amendment activities? Yes, that would be the standard. If there is proof in the evidence which would support a rational finding by a jury that he would not have been terminated, then I suppose there would be a question of fact. But our record simply doesn't contain that. There isn't a village board anywhere that wouldn't have fired Mr. Snowden. Look at what he did here. I mean, he was indicted on felonies. He was indicted on misdemeanors. He was not clear to those charges. After the appellate division found that there was not only grounds for prosecuting him on those charges, but that he should be prosecuted, they would not allow withdrawal of them, he took an adjournment contemplation dismissal. And while that's not necessarily an admission of guilt, it sure as heck isn't clearing him of the charges. And the specific finding of the Section 75 law officer of incompetency and misconduct, the village board would be hard-pressed to justify to his constituents why they didn't terminate this guy. If you can't be fired for, if you shouldn't be fired for incompetency and misconduct, I don't know what you should be fired for. So, I mean, you know, the preponderance of the proof would not, it would be pure speculation for a jury to say, well, gee, you know, with all the facts that were in the record regarding Snowden, I could see where the village board would just, you know, suspend him for three weeks or a month or whatever it is. An employee in Snowden's position should be and would have been terminated. That's what the preponderance of the evidence shows. A rational juror finding otherwise would be purely engaging in speculation. I'd also like to point out that in regard to the individual defendants, it should be noted that there's no proof that defendants Wire, Rue, and Nargazian actually terminated Snowden's employment. The decision to terminate him was made by non-party village manager David Sager. A lower court found that a jury could find that Sager acted the direction of the village board simply because he serves at the pleasure of the village board. Serving at the pleasure of the board just means that they can fire him if they have a reason to do so. It doesn't mean that he's their puppet that does literally everything that he does at their say-so. Respectfully, the district court was wrong. This would require a jury to engage in sheer speculation to find that Sager had fired Snowden at the specific direction of the village board. And I'd also like to point out that in regard to Nargazian, while he was the interim village manager, at the time the village board voted to suspend Snowden, they also appointed a new interim village manager to fill Nargazian's position. So he wasn't even employed by the village at the time that Snowden was suspended. And at the time that Snowden was terminated, Nargazian wasn't employed by the village at all. So he couldn't possibly have had any role in the termination of Snowden. On those facts, I don't know how a First Amendment retaliation claim could possibly be maintained against defendant Nargazian. Lastly, in regard to the appellee's argument that the court lacks jurisdiction to hear this appeal, we feel that the court does because of the qualified immunity argument being made. That is, there isn't a factual dispute over the salient facts, which I've just gone over in part at least. And even under the appellee's argument version of the fact, I think that it's our position that the district court still should have granted summary judgment on the qualified immunity defense to the defense. Thank you. We'll hear from the appellee. Good morning. Good morning, Your Honors. Can you hear me? Yes. Yes. Go ahead. Michael Sussman, appearing for Mr. Snowden. I'm not sure that I understand, frankly, the argument. It's not from a summary judgment motion denial. There's no such appeal. It relates to qualified immunity and qualified immunity only. And let me confine my remarks to that, interweaving the facts as needed. The district court correctly held that there was a material dispute as to whether defendants violated plaintiff's right to political association by engaging in a series of adverse employment actions, including a suspension and termination shortly after assuming control of the village government. The district court correctly held the prior arbitral and state court findings do not preclude a federal jury from concluding itself that these appellants behaved as they did in retaliation for protective speech engaged as protective association engaged in by the plaintiff with the mayor. Matusik settles this quite clearly at 757 F3rd 31. Appellants claim that they're entitled to qualified immunity because it was objectively reasonable to suspend plaintiff without pay, not with pay, for 30 days as permitted by Section 75 if he had been criminally indicted. However, this assumes that the reason they suspended him was because of the indictment, not because of their underlying animosity as manifest by six months of prior personnel related decisions, which included hiring a deputy without consulting with him, then paying the deputy a higher salary than it paid him and replacing him in cabinet level meetings with the deputy. Nargisian did that, abrogating a contract the prior board made with him, relocating his office to what he described as a closet, firing his secretary, taking the car he was provided so as to do the work of a code enforcement officer, and stripping him of duties for which he was then being compensated as the youth director. Likewise, appellants contended they acted in an objectively reasonable manner in terminating plaintiff for committing crimes even though the criminal charges were once dismissed in the interest of justice and then after being adjourned in contemplation of dismissal. The hearing officer did not recommend termination in this case with regard to the Section 75 proceeding. In this regard, appellants also claimed their newly hired manager, Sager, terminated plaintiff even though the termination letter was signed by defendant Mayor Solomon and represented the express will of these appellants. The district court correctly held that qualified immunity would not apply if on these facts a jury concluded that retaliatory animus motivated each of the adverse personal actions. That decision is plainly correct as a matter of law. Plaintiffs have the right to engage in political association. Appellants do not deny that. And if these appellants acted as they said they would to punish him for that association, they plainly violated the right. And there's no inconsistency between that holding, as the Matusik case points out, and whatever happened in the state courts. In addition, I just asked, I realized the plaintiff's jump. Your adversary doesn't appear to be making this point. But I'm what is what is the plaintiff's on the plaintiff's version of the facts? What is the nature of the political association here? Because as I look at the record, your client doesn't in the complaint doesn't say he was a member of Jenkins party that they were aligned politically. He didn't campaign for him. Jenkins testified that Snowden didn't complain, campaign for him. They went to events together. Snowden was probably with him on the night that cited with the defendants on the other side of the room. But when he specifically asked, did the plaintiffs ever publicly take sides on any issue? Jenkins says no. James always did his job and he always tried to stay out of politics. So could you just help me understand the nature of the political association between your client and the mayor? Of course. Thank you, Judge, for the opportunity. In this case, it's a small village. And when the mayor needed and this was publicly known and described in all of the rue commentary, who was one of the board members when he relied upon someone to do any task, he relied upon Mr. Snowden. Mr. Snowden took over for him in his absence. And Mr. Snowden was publicly supportive of the mayor's initiatives. As Mr. Snowden's affidavit in response to the summary judgment motion indicates, there was great political consternation and dispute in the small village. And Snowden and the mayor were entirely aligned with regard to the agenda that the mayor and his team were pushing. In addition, part of the association was the mayor had been accused falsely in a criminal matter. And Mr. Snowden was the person who stepped up and testified for him, a matter which got great publicity. And others who were political opponents were, of course, on the other side during that brouhaha and associated Mr. Snowden with the mayor by dint of that. So there were any number of associations which were, in fact, political in nature, as viewed in the village and as viewed by those who were making the decisions. They associated Snowden as the principal deputy for Mr. Jenkins. And that's not denied, really, in this record. I wanted to go on, if I might. I'm sure there may be other questions. This is Judge Chin. I have a question. The Mount Healthy argument, he is indicted for bribery. You have a public employee being indicted for serious crimes. It's hard for me to understand why you wouldn't suspend him immediately upon the indictment for these kinds of crimes. Well, it's interesting. In this case, if you follow the chronology, the indictment came about 13 months after the underlying event. And in this particular case, the village propounded no disciplinary charges against my client for two years after the indictment. The indictment was premised on allegations which the village itself, as you know, what happened with the indictment was essentially, at the end of the day, nothing. It was ACD'd. There was no vindication of any of the charges in the indictment. The village, eventually, in July 2016… Is your argument that this was a politically motivated indictment and therefore not entitled to any weight? Absolutely. And we will show that. But even if that's not accepted, the animus which had surrounded the prior six months makes a citation to your decision in Taravella important. And I think that the quote is this. Although a conclusion of defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts. If there was such a dispute, the factual question must be resolved by the fact finder. Here, in my view, these words have particular saliency. Because in the months leading up to this, there was a tremendous animus expressed against Mr. Snowden by the same individuals who were then suspended him, did not bring him up on charges. Never brought him up on charges for two years. And ultimately, when they did bring him up on charges two years later, that charge went to a politically appointed person, Marvin Newberg. Mr. Newberg made certain conclusions which under the Matusik case are really not relevant to whether, in fact, First Amendment animus motivated this or substantially motivated. And as you point out, Judge Chin, Mount Healthy is very relevant here. Because these individuals will have an opportunity at trial to prove what the court suggests would be obvious to anyone. I'll say a jury will reject that categorically. Because they will see the level of animus against my client and say, that's not what really happened to you. What really happened to you is they wanted to get rid of this man from the beginning. They lobbied for this result. This result eventuated. They then kept him on the sidelines for two years. Eventually brought him up on charges before someone who himself was a political appointee. That person himself... Mr. Sussman, what evidence is there that they lobbied for the indictment? If one looks at the Rue correspondence, Ms. Rue was requesting publicly that these individuals, Snowden and Jenkins, be indicted. Because she claimed they had made the conspiracy which counsel averted to. Which conspiracy was never proven, never established in a court of law. That they would hire someone for $5,000 to do a demolition, as counsel said, $150,000 worth of work. The fact of the matter is that Mr. Jenkins made that decision with no input from Mr. Snowden. Everyone has testified to that. Mr. Snowden had no role in giving the demolition permit under law. That was the responsibility of the village manager, not him. And the association betwixt the two is what caused the animosity toward Snowden. People were upset about what had happened, even though they all approved of the demolition. They knew it had to happen. It was a building the roof was falling in on. There was no alternative. But they still took the situation as a means of politicizing the situation and ostracizing Mr. Snowden. But you aren't challenging the proposition that the village manager, Sager, acted properly in terminating your client's employment. Mr. Sager did not act alone, as the letter makes very clear. The letter is signed by the mayor. The mayor was Mr. Solomon. Mr. Solomon was part of this cabal from the very beginning. Mr. Sager was hired in a context where everyone knew that this was the result this board wanted. One would have to really put a blinders on, and I don't think a jury would do that, to say Mr. Sager somehow acted independently. That would be ridiculous. This was a primary objective which this group had. To sideline, curtail him, and punish him because of his association with Jenkins. Not because of what he did. It was because what he did was, if one looks even at the facts found, minimal. He had no involvement in setting up the contract with Mr. Soto and Mr. Kerwin. That was not his role. He had no role in permitting the demolition. That was not his role. He set up the cones surrounding it to ensure safety during the demolition, which was his role. It was not disputed. Even working around the facts found by Mr. Newberg, we can still demonstrate to a jury, and this is the same situation that is obtained in Matusik, that First Amendment animus, not any objective behavior by my client, motivated this. Moreover... I'm sorry. Thank you, Your Honor. Thank you. We'll hear rebuttal. Your Honors, the apolice spent a great deal of time, both with oral argument and their brief, arguing retaliatory motive. And I don't really think that that's terribly relevant to this appeal. I think for purposes of this appeal, and in regards to qualified immunity, you have to assume that they have alleged, at least, retaliatory motive and submitted some proof of it. But I think where the appellees go wrong is unfairly minimizing the importance of the Section 75 officer's finding of Snowden's incompetence and misconduct. That finding was not only made by him in an administrative proceeding, but it was made by the New York State Appellate Division. It's a binding finding, as the district court found collateral... Even assuming the binding is... the finding is binding, the officer did not suggest dismissal. You know, the board had discretion. They could have done something short of dismissal. They could have suspended him for a period of time. Instead, they imposed the harshest discipline possible. I mean, why does that not create an issue of fact, notwithstanding the finding? Because the question isn't whether they could have. The question is whether they would have. It can't be the case that every time a public employee is engaged in First Amendment activity, prior to being discharged for cause, an issue of fact exists on the First Amendment retaliation. There's always a spectrum of the levels of discipline that a municipal government board can impose on a delinquent employee. But when you look at what it is that the employee did, would you be in a position to say a reasonable government official in this position would impose this particular penalty? And when you look at what it is Snowden did here, I mean, he may not have been convicted of crimes, but he was at least incompetent and engaged in misconduct. Firing is what would have occurred in the affidavits that were submitted on the summary judgment motion by the defendants, I think, substantiate that. It's important to keep in mind also that although, yes, this is a summary judgment motion, qualified immunity isn't just an affirmative defense. It's protection from being sued. It bars claims against everyone except for the plainly incompetent or otherwise misbehaving official. The court needs unqualified immunity argument, the district court, to make an initial determination as to whether the preponderance of the proof demonstrates that the plaintiff would have been fired under these circumstances by an objectively reasonable government official. Now, in our case, a preponderance of the proof, which is all that's needed, shows that given what Snowden did, he would have been terminated due to his incompetence and misconduct, even if it was a mixed motive termination. And on those facts, the district court erred in not granting dismissal as to the individual defendants. Thank you, Mr. Gabba. We'll take the matter under advisement. Thank you both.